Bissell, P. J.,
delivered the opinion of the court.
The case presented by this appeal lies within very narrow limits, and the determination of one question will settle the rights of the appellant. A short statement of the history of the case preceding the entry of the judgment complained of is essential to render the decision intelligible.
In 1889, Rushworth and Smith fell out concerning a business which they had been carrying on at La Jara, in Conejos county. Rushworth brought a suit against Smith, alleging a copartnership, praying an accounting, a dissolution and a winding up of the affairs of the concern. Smith took issue as to the existence of the copartnership, and likewise brought *564 a suit against Rush worth to recover certain moneys which he claimed to he due on sundry transactions between them. After these suits were brought, the issue as to the existence of the copartnership was submitted to a jury, which found this fact against Smith, and thus established the existence of the firm. Subsequently the two suits were consolidated, for it was conceded apparently that if there was a firm, Smith’s claims against Rush worth concerned the partnership business. After the consolidation, Rushworth’s interlocutory application to appoint a receiver to take charge of the firm’s affairs and wind up the business was submitted, and by stipulation of the parties Lorenzo D. Eskridge was in August, 1889, appointed that receiver. The order of appointment contained this clause, “ and it is further ordered and decreed that the said receiver may continue the business of the La Jara store and replenish the stock therein from the moneys received, until said stock can be sold at a good and reasonable price.” The sole difference between the parties to this suit is over the interpretation of that clause. It appears that immediately after the parties agreed upon the order, Mr. Eskridge took possession of the store, and became what might well be termed a “ country merchant.” He employed the usual and necessary help to aid' in his business, and proceeded to sell and dispose of the stock in the ordinary course of trade, and, to further his purpose and what he conceived to be the intent of the order, he replenished the stock from time to time by the purchase of such goods as were essential to the carrying on of the business at the store. These goods were not generally bought for cash, but as is the custom of merchants on the usual thirty days time, and ultimately as the bills came in they were liquidated out of the proceeds of the sales. It is this circumstance which has led to the dispute. The business was carried on until the court met at the ensuing term in the following June, when the receiver was called upon for a report. He filed a statement under the order and at various times amended it, until he had placed on file some six or seven statements concerning the execution of his trust. The *565 court made sundry orders concerning the matter, and finally in May, 1892, which was about three years after the original appointment, found that there was due from him the sum of $1,179.75, which he was directed to pay into court by the 11th of July, 1892, for the benefit of whomsoever might be entitled to it. It will be seen that the controversy over the administration of the trust had been continued some two years before this final result was reached. In making the order, the court held that Eskridge was without authority to buy the goods with which he had replenished the stock, and that he had in violation of his trust bought the goods on credit, and was therefore disentitled to any allowance because of these purchases, or to any allowance for the proportionate disbursements attendant upon their disposition. In other words, the court adjudged that in winding up the estate, and settling the accounts of the receiver, he was to be charged with the goods which came into his hands originally, the moneys which he had collected on account of the debts due the firm, and was only to be credited with such proportion of his subsequent outlay as that result might bear to the sum total of the business. As the court put it, these matters stood in the ratio of six to twenty-three, and, in reference to all his expenditures and transactions, the court computed the result on such basis, and concluded that he owed the estate $1,179.75.
There will be no attempt whatever to state the accounts 'of the receiver with the estate on the basis of the information which is contained in the record. This labor will be devolved upon the court below, which has, or can acquire, complete data for the determination of the rights of the parties under the rules which we may announce. The status of a receiver is well settled in the law. He is a trustee and an officer of the court, he is charged with the dutj? of managing the estate intrusted to his care, and he must see to it that this duty is performed with due regard to the rights of the litigants, and in such manner as according to his best judgment to preserve and bring into court what has been committed to *566 his care. It would ordinarily be true that he would have no right to carry on a mercantile business of which he had been put in charge, otherwise than to dispose of the property turned over to him for the best price possible, and produce the funds for the benefit of those entitled to them. Should he do otherwise, he doubtless would, in the absence of express authority, be liable for any damage which might occur. But the present case is not brought within the scope of that very well recognized rule. The only person contending for the enforcement of the order is Smith, one of the litigants, and he cannot be heard to complain of what the receiver did without some other showing than that in the record. The order under which Eskridge was appointed and which gave him authority to act was entered by consent. The parties are' bound by its terms. They are concluded as to what Eskridge did under it, providing his acts can be brought within the scope of the order, and he is not by the evidence aliunde shown to have been guilty of misconduct. This last suggestion may be removed from our consideration, since the court expressly finds that what he did was under misapprehension of the orders of the court, and that there was in his doings no element of misfeasance or malfeasance. The naked question then remains whether the order justified the receiver ip buying the goods as he did, and carrying on the trade regardless of the result. This conclusion seems to us irresistible. Iu addition to the specific provision already recited, the order directed that none of the goods or property of the partnership should be sold at public auction, and ordered that they should be disposed of in the course of trade, and that the debts should be liquidated from the moneys arising from such sales of the property. When we remember that the1 order specifically directed the receiver to replenish the stock, and continue the business of the store and dispose of the goods in due course of trade, we must find that he was fully authorized to carry on the business of the store and buy what, in his judgment, reasonably and prudently exercised, should be essential to the execution of the terms and evident purpose of the order. So far as we are now ad *567 vised from the present record this was all that he did, and he was entitled on the showing which he made to have his account so taken and stated as to include his purchases, and the expenses ordinarily and necessarily incident to the carrying on of the business. This interpretation put upon the order is all that seems essential to enable the district court to properly state the account, so as to do justice and equity as between the parties. There is not enough in the record to enable us to say what sum ought to be allowed the receiver for his compensation. It is always true that wherever a person is put in charge of property, to preserve it pendente lite, and to dispose of it and bring the proceeds into court, he is entitled to a reasonable and fair compensation for the work which he does. Since, in this case, the receiver was ordered to continue the business and to carry it on for the benefit of the parties, he is entitled to a fair remuneration for his labor. Whether the percentage which the court fixed would, under our interpretation of the duties and rights of the receiver, be deemed reasonable, we are not advised. There is not enough before us to enable us to determine what that compensation should be, and we can only suggest that if the whole transaction is found to be fair and free from misfeasance, and the trust was exercised with that reasonable prudence which a receiver is bound to exercise, the compensation allowed would not appear commensurate with the labor. The court, of course, under well settled principles, is bound to take into consideration the manner in which the trust has been executed, and is quite at liberty, upon adequate showing in that regard, to either limit the pay or withhold it altogether. That the court may be fully advised as to our conclusions of the proper basis on which to proceed to enter the proper order, we will further suggest that, in our judgment, the receiver should not be charged with the losses which resulted from the ultimate sale of the goods by auction. The goods were so sold by the direct order of the court, and the parties are bound by the consequences of the order which they procured to be entered. Since we have holden the goods which the receiver purchased *568 a part and parcel of his trust, the loss on the sale of them would as legitimately become a part of his final'account as any loss which may have occurred in the sale of the stock which originally came into his possession. This is enough to indicate to the court the basis on which the account should be taken and stated. No other question is presented by the record, and no matters have been considered or discussed by counsel in their briefs, save those which turn upon the proper construction and consideration of this order, and its proper construction is therefore the only matter decided by the court.
The order will be reversed, with directions to the court below to further proceed in conformity with this opinion.

Reversed.